UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PEGGY HAYNES, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-2201 |
| | § | |
| CRESCENT REAL ESTATE EQUITIES, LLC, | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

Pending before the court is defendant Crescent Real Estate Equities, LLC's ("Crescent") motion for summary judgment (Dkt. 23) and plaintiff Peggy Haynes's motion for summary judgment as to Crescent's counterclaims (Dkt. 24). After considering the motions, related filings, and applicable law, the court is of the opinion that Crescent's motion for summary judgment (Dkt. 23) should be GRANTED and Haynes' motion for summary judgment as to Crescent's counterclaims (Dkt. 24) should be DENIED.

**I. BACKGROUND**

This is a Fair Labor Standards Act ("FLSA") retaliation action in which Haynes claims that Crescent terminated her employment because she complained about Crescent's alleged violations of the FLSA. *See* Dkt. 10. Haynes, who worked for Crescent as Vice President of Human Resources prior to her termination, contends that she informed Crescent's managing directors in 2008 and 2009 that Crescent's discretionary bonus program was, in reality, nondiscretionary and that the nonexempt employees subject to the bonuses were not being paid in accordance with the FLSA. *Id.* Haynes claims that she altered a bonus spreadsheet to include employee overtime hours, rates, and earnings, and that she used this spreadsheet to demonstrate Crescent's FLSA violations. Dkt. 23, Ex. B.

Haynes claims she made four complaints: the first in January 2008 to Suzanne Stevens, Haynes' supervisor and managing director at Crescent; the second in February 2008 to a Vice President of Human Resources at Morgan Stanley, although Haynes cannot remember her name; the third in January 2009 to Stevens and Paul Smith, another managing director at Crescent; and the fourth in March or April 2009 to Stevens and Carolyn Labus, an employee in the Human Resources department.  Dkt. 23, Ex. B.  The last complaint, which Haynes made to Stevens in March or April 2009 on the telephone, is the only complaint about which she claims to have received a negative response: Stevens allegedly told Haynes to "drop it" and "don't bring it up again" before hanging up the phone.  *Id.*

Crescent promoted Haynes to Vice President of Human Resources in October 2007, a position which required her to move from Houston to Fort Worth.  Dkts. 23, 24.  Crescent offered Haynes a relocation package, the details of which are debated by the parties.  *Id.*  Haynes alleges Crescent offered to pay for any loss in the sale of Haynes' Houston home, but Crescent denies this allegation.  Dkts. 24, 26.  Haynes had difficulty selling her home in Houston, and Haynes claims Crescent suggested she commute.  Dkt. 24.  Crescent denies this and contends Haynes proposed commuting on her own.  Dkt. 26.  Regardless, Haynes and Crescent began negotiations regarding Haynes' commuting expenses, which Haynes estimated would be $30,000 for one year: approximately $18,000 for housing, $9,744 for mileage, and $3,600 for food.  Dkt. 26, Ex. B–4.  Haynes states that this was a "very conservative" estimate, while Crescent believes it was "high."  Dkts. 24, 26.  The parties reached a verbal agreement (the "Commuting Agreement"), the terms of which are in dispute.  *Id.*

Haynes sent Stevens an email on April 9, 2009, setting forth some of the details of the Commuting Agreement. The email states:

2

>I have tried to recap the agreement and if I have anything incorrect, please feel free to change. For my expenses going forward Crescent will pay me $30,000 in a years time for my travel, housing, and meals. This will be on a yearly basis and we will re-visit next April. Brooke Lowther will collect my actual expenses to compare to payout for tax purposes at year end.
>
>The following is how the expenses will be paid out:
>   $5000 initial pay out.
>   Remaining $25,000 to be divided by 26 payroll (payrolls in a yearly bi-weekly cycle) and added to my regular bi-weekly pay... . . $961.53 per pay check.
>
>If you are in agreement, please email your approval to Maureen and she will start the bi-weekly expense payout on May 2, 2008.

Dkt. 24, Ex. 4. After Stevens' response agreeing to those terms, Haynes sent another email stating: "Brooke is tracking all of my expenses. She is going to keep a running spreadsheet so we will have everything tracked, backup support and then be able to compare against my tax obligation, etc." *Id.*

The parties do not dispute the stated figures; instead, they dispute whether the living allowance was income to Haynes for tax purposes, whether Haynes was required to submit any documentation to Crescent regarding her expenses, and whether Crescent would have paid her more than $30,000 had Haynes incurred greater expenses. Dkts. 24, 26. The parties also disagree whether Haynes actually used the entire $30,000 provided to her. *Id.*

In June 2008, Stevens received an email sent from Haynes' account with a lease attached. Dkt. 23, Ex. B–2. The lease indicates that Haynes entered into an agreement as a tenant with Jay Lange to rent a house at 7509 Shore Court in Fort Worth for $1500 per month. *Id.* On April 28, 2009, Crescent received an anonymous complaint on its whistleblower hotline that Haynes falsified this housing lease, among other things.[1] Dkt. 23, Ex. A–8. Crescent began an investigation into the

---

[1] The caller made three other allegations which proved to be false. Dkt. 28.

complaint and found that the lease was invalid and that 7509 Shore Court does not exist. Dkt. 23, Ex A. During the investigation, Crescent asked Haynes to provide documentation of her living expenses, and Haynes produced receipts totaling $1,200. Dkt. 23, Ex. B. Haynes claimed she could not find her other receipts. *Id.* In an interview with the investigator, Haynes stated that she should not have provided the lease to Crescent. *Id.* However, in her deposition, Haynes denied that she sent Crescent the lease, denied that she knew Jay Lange, and denied that she saw the lease before being presented with it in June 2009. *Id.* Rather, Haynes alleges that the lease was falsified and sent by someone else, and that Haynes was staying with her niece, Jessica Mays, and a co-worker, Carolyn Labus. *Id.* Haynes allegedly paid Mays $400 per week for rent during the few weeks she was there, and $400 a week to Labus, paid in cash and food. *Id.*

On June 12, 2009, Crescent terminated Haynes's employment. *See* Dkt 10. Crescent claims that it terminated Haynes' employment because she provided Crescent with a falsified lease, concealed the fact that she was living in a house with her niece, and lied about: (1) the amount of her living expenses, (2) living in a duplex, (3) the rent she was paying her niece, (4) the reason she moved into her niece's house, and (5) needing $5,000 of the Commuting Agreement payment up front to pay for deposits on her residence in Fort Worth. Dkt. 31. Haynes contends that each of these reasons is false and that Crescent instead terminated her employment to retaliate against her for raising complaints about its alleged FLSA violations. *Id.*

Haynes filed her original complaint against Crescent on June 10, 2011 (Dkt. 1), and her first amended complaint on September 26, 2011 (Dkt. 10). Crescent filed its answer on November 28, 2011 (Dkt. 17), and included five counterclaims against Haynes: (1) breach of contract, (2) money had and received, (3) breach of fiduciary duty, (4) fraud and fraudulent inducement, and (5) fraud by nondisclosure. Dkt. 17. Crescent then filed a motion for summary judgment on May 10, 2012

4

(Dkt. 23). On the same day, Haynes filed her motion for summary judgment as to each of Crescent's counterclaims (Dkt. 24).

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id* . "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary

judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting former FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. CRESCENT'S MOTION FOR SUMMARY JUDGMENT

Crescent moves for summary judgment on Haynes' retaliation claim and argues that Haynes did not engage in protected conduct under the FLSA because (1) she did not step outside of her job duties as Vice President of Human Resources ("HR") to make a complaint, and (2) she did not have a good faith belief that Crescent was violating the FLSA. Dkt. 23. Crescent also asserts that it had several legitimate, non-discriminatory reasons for terminating Haynes' employment, and that Haynes

cannot prove these reasons are pretexual. *Id.* Thus, Crescent urges the court to find that Haynes has failed to raise a genuine issue of material fact regarding her retaliation claim. *Id.*

The *McDonnell Douglas* framework, which applies to cases brought under the FLSA, requires that the plaintiff demonstrate a prima facie case of: "(1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Hagan v. Echostar Satellite L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008). Once the plaintiff meets this burden, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. *Id.* If the defendant does so, the burden then shifts back to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination. *Id.*

A plaintiff engages in protected activity under the FLSA if she (1) files a complaint, (2) institutes or causes to be instituted any proceeding under the FLSA, (3) testifies or prepares to testify in any such proceeding, or (4) serves or prepares to serve on an industry committee. 29 U.S.C. § 215(a)(3) (2006). The parties are in agreement that the only protected activity Haynes allegedly engaged in is filing a complaint under Section 215(a)(3). Dkts. 23, 28. "An employee does not file a complaint under Section 215(a)(3) unless that employee somehow steps outside his normal job role. . . . 'by either filing (or threatening to file) an action adverse to the employer, . . . or by otherwise engaging in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.'" *Hagan* 529 F.3d at 627-28 (quoting and adopting the Tenth Circuit's reasoning in *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486-87 (10th Cir. 1996)).

### A. Stepping Outside Job Duties

Crescent claims that Haynes did not step outside her job duties to make a complaint because her job duties included ensuring that employees were properly paid and that Crescent complied with the FLSA. Dkt. 23. Crescent relies on Suzanne Stevens' statement in her affidavit that Haynes'

7

duties involved, *inter alia*, "ensuring that Crescent complied with employment-related laws such as the [FLSA]," and that Stevens "relied on Haynes to ensure that Crescent complied with [these] laws." Dkt. 23, Ex. C. Haynes argues that she did step outside her job duties when she created the spreadsheet documenting the monies that should have been paid out under the FLSA and when she complained to her supervisor in 2008 and 2009. Dkt. 28. Haynes asserts that her normal role did not involve ensuring compliance with the FLSA, rather it involved "facilitat[ing] or mak[ing] sure the policies and procedures that the company decided upon were carried out." *Id.*; Dkt. 23, Ex. B.

In her deposition, Haynes acknowledged that "one of [her] duties was to help ensure that employees were paid *correctly.*" Dkt. 23, Ex. B (emphasis added). Crescent interprets "correctly" as *lawfully*, and relies on this statement as Haynes' admission that she did not step outside her job duties when filing her complaint. Dkt. 23. However, Haynes interprets "correctly" as *accurately*, and maintains that her "department was responsible for making sure that the pay amount was [put] into [the] payroll system so [employees] were paid accurately," and that it was not her duty to advise Crescent or her supervisor about Crescent's bonus and overtime payment practices. Dkt. 23, Ex. B; Dkt. 28. Specifically, Haynes alleges it is the role of Crescent's *attorneys'* to "ensure that the employees are paid lawfully." *Id.* After considering the motions, evidence, and the applicable law, the court finds that the scope of Haynes' job duties at Crescent presents a genuine issue of material fact because a reasonable juror could find that Haynes stepped outside her role as Vice President of HR in filing her complaints. Therefore, for the purposes of these motions, the court will assume that Haynes did step outside her role of Vice President of HR in filing her complaints.

**B.     Good Faith Belief**

Crescent next argues that the court should grant summary judgment in its favor because Haynes did not have a good faith belief that Crescent was violating the FLSA. Dkt. 23. The Fifth

Circuit has not yet decided whether a good faith belief is required for an FLSA complaint. *See Hagan*, 529 F.3d at 630 (declining to address whether an employee's good faith belief may give rise to protected activity, even when there is no actual FLSA violation). The Seventh Circuit, however, has addressed the issue. *Sapperstein v. Hager*, 188 F.3d 852, 857 (7th Cir. 1999). In *Sapperstein*, the Seventh Circuit reversed the district court's dismissal of an employee's FLSA retaliation claim because the employee "had a good–faith belief that [the FLSA] might be violated," even though there was no actual violation. *Sapperstein*, 188 F.3d at 857. Crescent interprets *Sapperstein* as requiring a good faith belief that the FLSA has been violated and argues that Haynes did not have a good faith belief because she did no independent research on proper overtime/bonus payment under the FLSA, she consulted no books, HR materials, or attorneys on the issue, and she did not she seek anyone else's opinion about the legality of Crescent's pay practice. Dkt. 23. However, the Seventh Circuit explicitly rejects a requirement of such outside research to support a good finding belief, stating that:

> Congress might have put the risk on the employee to do his or her homework and make sure that there was actually a violation before going to the authorities, but it instead protected the employee regardless. . . . Congress instead wanted to encourage reporting of suspected violations by extending protections to employees who filed complaints, . . . . There is no requirement that those laws must actually be violated. It is sufficient that the plaintiff had a good-faith belief that they might be violated. No further requirements are implied by the law.

*Sapperstein*, 188 F.3d at 857. Thus, Haynes was not required to do her "homework" to ensure the violations in order to have a good faith belief that Crescent violated the FLSA.

Assuming, *arguendo*, that a good faith belief is required, Haynes presents evidence that she formed her belief that Crescent was not properly paying bonuses after she spoke with two former Crescent employees. Dkt. 23, Ex. B. This evidence creates an issue of material fact because a

reasonable juror could find that Haynes had a good faith belief that Crescent violated the FLSA through its allegedly non-compliant pay practices. Therefore, for the purposes of these motions, the court will assume that Haynes had a good faith belief that Crescent was violating the FLSA, and, since Haynes was terminated, she suffered an adverse employment action. She has therefore met her burden to show a prima facie case. The burden of production then shifts to Crescent to show a legitimate, non-discriminatory reason for her termination.

## C.     Legitimate Reasons for Termination and Pretext

Crescent also asserts that it had legitimate, non-discriminatory reasons for terminating Haynes' employment. Dkt. 23. Specifically, Crescent alleges that it honestly believed Haynes falsified a lease and repeatedly lied about a number of issues.[2] *Id*. Haynes claims that these reasons are merely pretext, and that Crescent actually terminated her employment because she filed multiple complaints. Dkt. 28.

Crescent argues that it had a good faith belief at the time of Haynes' employment termination that she falsified a lease. Dkt. 31. Haynes alleges that Crescent did not believe, in good faith, that she falsified the lease because Crescent based its investigation upon allegations made by an unreliable, anonymous caller. Dkt. 28. Haynes thus claims that Crescent's reasons for her termination are false and that the real reason is because she filed multiple complaints regarding Crescent's alleged FLSA violation. *Id.* Crescent contends that even if the caller was unreliable, they had ten other reasons to support a good faith belief that Haynes falsified her lease, including the tip on Crescent's hotline which initiated the investigation into Haynes' lease, Haynes' signature on the lease, Haynes' email to a co-worker attaching a copy of the lease, the temporal proximity between

---

[2] Crescent also argues that temporal proximity is not sufficient to prove pretext. Dkt. 23. Haynes does not assert this argument in its response, so the court need not address it. Dkt. 28

the Commuting Agreement and the date on the lease, an original version of the lease with Haynes' signature in Crescent's possession, the amount of monthly rent listed on the lease, and Haynes' statement that she should not have provided the lease and that she "screwed up" in doing so. Dkt. 31. The court finds that Crescent has submitted "ample evidence" of its good faith belief that Haynes falsified the lease, and that Haynes failed to produce evidence creating a genuine issue of material of fact of pretext. *See Cantu v. Vitol, Inc.*, CIV.A. No. H-09-0576, 2011 WL 486289 at *12 (S.D. Tex. Feb. 7, 2011) (finding that the plaintiff failed to show evidence of pretext and that the defendant produced substantial evidence consistent with other testimony.).

Crescent states that Haynes "submitted a fraudulent lease," however, it does not contend that it fired Haynes for acting fraudulently, i.e., for intentionally misrepresenting a fact to Crescent in order to induce Crescent to pay under the Commuting Agreement. Dkt. 23. Haynes attempts to prove Crescent's reasons are pretext by focusing on an accusation of fraud. Dkt. 28. Haynes argues that she could not have acted fraudulently because Crescent had already agreed to the Commuting Agreement at the time it received the lease and because Haynes was not required to produce a lease to receive the funds. Dkt. 28. Crescent, however, does not have to prove fraud. It just has to show it had a legitimate, nondiscriminatory reason for terminating Haynes' employment. Crescent's good faith belief that Haynes falsified the lease *is* a legitimate, non-discriminatory reason.

Crescent also alleges that it had a good faith belief at the time of Haynes' termination that she repeatedly lied to Crescent about: (1) the amount of her living expenses, (2) living in a duplex in Fort Worth, (3) living with her niece, (4) the amount of rent was she paying to live with her niece, (5) the reason she moved into her niece's house, and (6) needing $5,000 of the Commuting Agreement up front to pay for deposits on her residence in Fort Worth. Dkt. 31. Haynes argues that she did not lie about the amount of expenses she incurred. Dkt. 28. Haynes does not present any

11

evidence establishing pretext for the other five accusations. Because "[t]he plaintiff must put forward evidence rebutting each of the [legitimate and] nondiscriminatory reasons the employer articulates," Haynes has failed to met her burden. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (affirming the district court's judgement as a matter of law based on the plaintiff's failure to demonstrate pretext for each legitimate, nondiscriminatory reason).[3]

Although Haynes raised an issue of material fact whether she engaged in protected activity, Crescent had legitimate, non-discriminatory reasons for terminating her employment, and Haynes failed to raise an issue of material fact with regard to her claim of pretext on five of those reasons. Accordingly, Crescent's motion for summary judgment is GRANTED.

## IV. HAYNES' MOTION FOR SUMMARY JUDGMENT

In Haynes' motion for summary judgment as to Crescent's counterclaims, Haynes alleges that Crescent has no evidence to establish a genuine issue of material fact regarding any of its counterclaims. Dkt. 24. Crescent objects to the evidence Haynes' submitted in support of her motion, specifically certain paragraphs in her affidavit, and also contends that there is a genuine issue of fact as to each element of the five counterclaims. Dkt. 26. Haynes did not respond to Crescent's evidentiary objections.

### A.     Crescent's Objections to Plaintiff Haynes' Affidavit

Crescent objects to Haynes' affidavit on three grounds: (1) Haynes is asserting facts which are outside her personal knowledge, (2) Haynes' affidavit is a "sham affidavit," and (3) Paragraph 8 of Haynes' affidavit and Exhibit 6 both constitute hearsay. Dkt. 26.

---

[3] Although *Wallace* is a Title VII case, "the purpose of [the two statutes'] retaliation provisions is one and the same." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008). Accordingly, courts occasionally look to Title VII claims in interpreting FLSA claims. *See id.* (adopting Title VII jurisprudence regarding protection for former employees); *see also Hagan*, 529 F.3d at 624 (adopting the Title VII *McDonnell Douglas* framework).

In order to serve as competent summary judgment evidence, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e). First, Crescent objects to statements from Haynes which are not based on her personal knowledge. Dkt. 26. Specifically, Haynes stated in Paragraph 7: "[the $30,000] was not income to me. Rather, it was a living allowance . . . ." Dkt. 24, Ex. A. Crescent claims that this statement is a legal conclusion which is outside Haynes' personal knowledge. Dkt. 26. Haynes also stated in Paragraph 8: "it was obvious that I would incur at least [$30,000] by virtue of my regular travel . . . ." Dkt. 24, Ex. A. Crescent argues that this is also outside Haynes' personal knowledge, as she cannot contend something is obvious to anyone besides herself. Dkt. 26. The court finds in both instances that Haynes is only expressing her opinion, therefore Crescent's objections as to personal knowledge are OVERRULED.

Crescent also objects to Haynes' affidavit as a "sham affidavit" because it directly contradicts her deposition testimony. Dkt. 26. It is well established in the Fifth Circuit that a "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984) (citing *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)). In Paragraph 9 of her affidavit, Hayes stated that she "used all the funds given to [her] as a living allowance for commuting expenses." Dkt. 24, Ex. A. Crescent claims that Haynes affirmed, in her deposition, that she did not spend the entire amount. Dkt. 26 (citing Dkt. 26, Ex. B pp. 170:22–176:2; 183:1–21). However, a review of the testimony reveals that Haynes was referring to "examples" and "averages," and not her actual experience. Dkt. 26, Ex. B. The deposition testimony and affidavit are not in conflict; thus Haynes' affidavit is not a sham affidavit. Crescent's objection as to the sham affidavit is OVERRULED.

13

Lastly, Crescent objects to a statement in Paragraph 8 of Haynes' affidavit and to Exhibit 6 as hearsay. Dkt. 26; *See* FED. R. EVID. 801-807. Paragraph 8 states that Haynes and Crescent met with an accounting firm and notes what the consultant at the accounting firm said. Dkt. 24, Ex. 1. Exhibit 6 is an "anonymous" letter to Crescent that supports Haynes' contentions in this case. Dkt. 24, Ex. 6. Both items clearly constitute hearsay. Crescent's objections to Paragraph 8 of Haynes' affidavit and Exhibit 6 are SUSTAINED. The court will not consider this evidence.

## B.     Breach of Contract

In its first counterclaim, Crescent alleges Haynes materially breached the Commuting Agreement by failing to provide Crescent with accurate documentation of her commuting expenses. Dkt. 17. To succeed on a breach of contract claim, Crescent must establish the following elements: (1) a valid enforceable contract existed; (2) Crescent performed or tendered performance; (3) Haynes breached the contract; and (4) Haynes' breach was the cause of Crescent's injury. *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 713 (Tex. App.—Corpus Christi 2006, pet. denied)**.**

Haynes argues that Crescent cannot establish an issue of material fact regarding elements three and four. Dkt. 24. Haynes claims that she did not breach the Commuting Agreement because she was not required to provide any documentation, and that Crescent has acknowledged the lack of such a requirement. *Id.* Haynes also asserts that she incurred the entire $30,000 in expenses and that Crescent has not been damaged as a result of any alleged breach of the agreement. *Id.* Haynes cites Stevens' deposition for support of these claims, referring to Stevens' testimony that Crescent's financial statements were not impacted. Dkt. 24, Ex. 2. Crescent argues that there is "abundant evidence" that Haynes was required to provide documentation, and that she breached the contract by providing receipts for only $1,200 of her commuting expenses. Dkt. 26. Further, Crescent

14

presents evidence regarding Crescent's injury, namely that it paid for housing expenses not actually incurred by Haynes. *Id.* The court finds that the conflicting testimony creates a factual dispute that is better suited for the jury. Therefore Haynes' motion for summary judgment on Crescent's breach of contract claim is DENIED.

**C.     Money Had and Received**

Second, Crescent alleges Haynes did not incur expenses of $30,000, therefore she holds money that belongs to Crescent in equity and in good conscience. Dkt. 17. "A cause of action for money had and received is not based on wrongdoing but instead, 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" *Doss*, 210 S.W.3d at 711 (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)). Since the court has found that there is a factual dispute regarding whether Haynes incurred $30,000 in commuting expenses, the court cannot determine as a matter of law whether Haynes received money which rightfully belongs to Crescent. Therefore, Haynes' motion for summary judgment on Crescent's money had and received claim is DENIED.

**D.     Breach of Fiduciary Duty**

Third, Crescent claims Haynes had a fiduciary relationship with Crescent due to her employment with Crescent, and that Haynes therefore owed Crescent a fiduciary duty. Dkt. 17. Crescent contends Haynes intentionally breached her duty by misrepresenting her anticipated housing expenses, presenting a fraudulent lease to Crescent, and seeking reimbursement for housing expenses she did not actually incur. *Id.* "The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant, (2) the defendant must have breached his fiduciary duty to the plaintiff, and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.—Dallas 2006, pet.

15

denied). Haynes challenges the second and third elements of Crescent's allegation, stating that Haynes did not breach her fiduciary duty because she *did* incur the entire $30,000 in commuting expenses and that Crescent did not incur any damages from the alleged breach. Dkt. 24. As discussed in the prior claims, the court finds that Crescent has presented enough evidence to demonstrate a genuine issue of material fact regarding Haynes incurred costs and Crescent's damages. Therefore, Haynes' motion for summary judgment on Crescent's breach of fiduciary duty claim is DENIED.

**E.     Fraud and Fraudulent Inducement**

Fourth, Crescent alleges Haynes presented it with a falsified lease, falsely stated that she would incur expenses of $1,500 per month, and falsely represented that she actually incurred these expenses. Dkt. 17. Crescent claims Haynes knew these statements were false and that she intended Crescent to act on them by providing her with the money under the Agreement and continuing to pay the installments throughout the year. *Id.* Lastly, Crescent claims it relied on Haynes' false statements to its detriment when deciding how much to pay her, when making payments to her, and when negotiating the terms of and entering into the Agreement. *Id.* Texas law requires proof of six elements to establish a claim of fraud: (1) a material misrepresentation; (2) the representation is false; (3) the speaker knew it was false or was reckless in making the statement; (4) the speaker intended that the other party act upon the statement; (5) reasonable reliance; and (6) injury resulting from the misrepresentation. *Fagan Holdings, Inc. v. Thinkware, Inc.*, 750 F. Supp. 2d 820, 833 (S.D. Tex. 2010).

Haynes contends Crescent has no evidence regarding elements four, five, and six. Dkt. 24. First, Haynes argues she could not have induced Crescent to act by presenting the falsified lease, and Crescent could not have relied on the lease, because Crescent and Haynes entered into the

16

Commuting Agreement before Crescent knew of the falsified lease. *Id.* Second, Haynes argues that she used all of the money under the Agreement so Crescent has suffered no injury from the alleged misrepresentation. *Id.* While the court agrees that Crescent was not induced to *enter into* the Agreement by the falsified lease, Crescent does present an issue of material fact regarding whether Haynes falsified the lease to induce Crescent to *continue to make payments* under the Agreement. Further, whether Haynes incurred the entire amount and whether Crescent suffered any injuries are matters for the jury to decide. Accordingly, Haynes' motion for summary judgment regarding Crescent's claim of fraud and fraudulent inducement is DENIED.

**F.     Fraud by Non-Disclosure**

Crescent's last counterclaim alleges that Haynes concealed, or failed to disclose, the fact that she was not actually incurring the living expenses she represented to Crescent, and that she had a duty to disclose the actual amount due to her fiduciary relationship with Crescent. Dkt. 17. Fraud by non-disclosure occurs when:

> [1] a party conceals or fails to disclose a material fact within the knowledge of that party, [2] the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth, [3] the party intends to induce the other party to take some action by concealing or failing to disclose the fact, and [4] the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

*Bradford v. Vento*, 48 S.W.3d 749, 754–755. Haynes argues that Crescent cannot establish any of the elements because she did incur the living expenses she represented to Crescent, namely the $30,000 under the Commuting Agreement, so she did not conceal or fail to disclose any information from Crescent. Dkt. 24. Further, Haynes argues that Crescent has not suffered any injury. *Id.* Similarly to Crescent's other counterclaims, the court finds that the conflicting testimony regarding

Haynes' actual expenses is a determination for the jury. Haynes' motion for summary judgment regarding Crescent's claim of fraud by non-disclosure is DENIED.

## IV. CONCLUSION

After consideration of the motions, responses, and applicable law, Crescent's motion for summary judgment (Dkt. 23) is GRANTED and Haynes' motion for summary judgment as to Crescent's counterclaims (Dkt. 24) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on July 2, 2012.

_____
Gray H. Miller
United States District Judge